## Case No. 13,615.

### The SUNBEAM.

[Blatchf. Pr. Cas. 656.] [1]

Circuit Court, S. D. New York. July 17, 1863. [2]

PRIZE — ATTEMPT TO ENTER BLOCKADED PORT — NECESSITY — CONTRABAND CARGO — NOTICE OF BLOCKADE.

1. Decree of the district court, condemning vessel and cargo for an attempt to violate the blockade, affirmed.

2. False and simulated papers as to the destination of the vessel.

3. The pretence that the vessel sought the blockaded port in distress overruled.

[Cited in Stokely v. Smith, Case No. 13,473.]

4. Part of the cargo was an innocent shipment, and neither the owner of it nor any of his agents were implicated in the fault of the vessel. But, in case of a blockade, the general rule is that the deviation of the vessel into the blockaded port is presumed to be in the service of the cargo, and that the owner is bound by it, except in the absence of notice of the blockade at the time the vessel sailed. In this case there was no such want of notice.

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel in prize against the steamer Sunbeam and cargo. There was a decree for the libelants in the district court (Case No. 13,613), from which this appeal was taken. For a motion to stay the sale of the property, see Id. 13,614.]

NELSON, Circuit Justice. This steamer was captured in the act of entering the port of Wilmington, North Carolina, a blockaded port, on the morning of the 28th of Sep-

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirming Case No. 13,613.]

tember, 1862, by the United States steamer State of Georgia. She belongs to H. Lafone, a merchant of Liverpool, and a British subject, who is also owner of all the cargo except eighteen bales of merchandise, worsted stuffs, belonging to J. Greenwood, of Bradford, England, their manufacturer. The cargo belonging to Lafone consists of powder, lead, arms, boots, shoes, &c., and was put on board at Liverpool in August. 1862. The bales of worsted stuffs were shipped at the same time and place through agents of the manufacturer and owner. The ostensible destination of the vessel was to Matamoras, Mexico. She started on her voyage from Liverpool on the 6th of August, reached Halifax on the 5th of September, left that place for Matamoras on the 14th of the month, and on the 28th was captured, as already stated, while entering the port of Wilmington. The pretext set up for the deviation and the entrance into that port is the disabled condition of the vessel from a storm encountered on the voyage on the 19th of September, eight days before the capture. Without going over the evidence, I deem it sufficient to say that this storm and its effects upon the vessel are greatly exaggerated, and do not furnish a satisfactory excuse for her position at the time of the capture. There are also many facts and circumstances in the case tending strongly to the conclusion that the voyage to Matamoras was simulated, and that the original destination was to one of the ports of the Confederate States.

It has been strongly argued that the owner of the worsted stuffs was ignorant and innocent of the fault of the master, and that the master was not the agent of that part of the cargo, which was shipped in the usual way, with a separate and distinct bill of lading, invoice, &c., and that it should not be held responsible for the deviation of the ship into a blockaded port. I am inclined to think, upon a full consideration of the evidence bearing upon this part of the case, that, in point of fact, this was an innocent shipment, and that neither the owner nor any of his agents were implicated in the fault of the vessel. But the general rule seems to be, that, in case of a blockade, the deviation of the vessel into the blockaded port is presumed to be in the service of the cargo, and that the owner is bound by it, except in the absence of notice of the blockade at the time the vessel sailed. In this case the vessel sailed from Liverpool on the 6th of August, 1862, some months over a year after the establishment of the blockade of the ports of the state of North Carolina. The fact was well known at Liverpool, and, indeed, in all England, at the time the ship sailed. Decree below affirmed.